UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jacob A. Rubini (R00268), *Petitioner*, v. Brittany Greene, *Respondent*. | No. 24 CV 1943<br><br>Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Jacob A. Rubini ("Rubini"), an Illinois state prisoner, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2019 conviction for home invasion and aggravated domestic battery. [Dkt. 1.] For the reasons stated below, the petition is denied.

I.  **Background**[1]

In November 2018, Rubini was charged with home invasion, aggravated domestic battery, and attempted criminal sexual assault. *People v. Rubini*, 2021 IL App (2d) 200064-U, ¶ 4. The charges stem from an incident on November 25, 2018, when Rubini entered the home of his ex-girlfriend, K.C., assaulting her and causing great bodily harm. *Id.*

---

[1] In reviewing a petition for federal habeas corpus, the Court presumes that the state court's factual determinations are correct unless Petitioner rebuts those facts by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Weaver v. Nicholson*, 892 F.3d 878, 881 (7th Cir. 2018). Rubini does not challenge any of the underlying facts in his petition, so the Court draws the facts from the Illinois Appellate Court's opinion in his direct appeal, *People v. Rubini*, 2021 IL App (2d) 200064-U; the Illinois Appellate Court's order denying Rubini's postconviction appeal, *People v. Rubini*, No. 2-22-0320 (Ill. App. Ct. May 31, 2023), ECF No. 16-4; and the state court records that Respondent provided pursuant to Rule 5 of the Rules Governing Section 2254 Cases.

K.C. and a responding police officer, Johnathan Finze ("Finze"), were involved in or testified during the order of protection hearing as well as during pre-trial and trial proceedings. Portions of their testimony and alleged discrepancies between them are relevant to the issues raised in this habeas petition, so the Court summarizes the key facts below.

### A. Order of Protection Proceedings

Four days after the assault, K.C. petitioned for an order of protection; the trial court immediately issued an emergency order against Rubini. [Dkts. 16-3 at 43–51; 16-4 at 1.][2] The trial court extended the order twice before the State sought a plenary order of protection in March 2019, pursuant to section 112A-11.5(a) of the Illinois Code of Criminal Procedure. [Dkts. 16-4 at 1–2; 16-2 at 111; 16-3 at 5–7, 10.] Under that provision, a state court must enter an order of protection where there is *prima facie* evidence of a sexual offense, which can include an indictment charging a crime of domestic violence or a sexual offense. [Dkts. 16-3 at 11, 15; 16-4 at 1–2.]

At a hearing that month, the State argued that the indictment provided *prima facie* evidence of sexual assault and entitled K.C. to a plenary order of protection without requiring her testimony in the proceedings. [Dkts. 16-3 at 10–11.] Rubini's counsel objected, arguing that the statute was unconstitutional because it allowed for an order of protection without giving Rubini the opportunity to confront his accuser. [Dkts. 16-2 at 111; 16-3 at 12.] After counsel requested time to file a motion on the issue, the trial court continued the matter and extended the order for two weeks.

---

[2] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

2

[Dkt. 16-4 at 1–2.] Before the court ruled, K.C. dismissed her petition for a plenary order after the court denied the State's motion to consolidate Rubini's criminal case with the order of protection proceedings. [Dkts. 1 at 59; 16-2 at 111; 16-3 at 29–31; 16-4 at 2.]

### B. Trial and Conviction

In October 2019, the matter proceeded to a jury trial on the three criminal charges. *Rubini*, 2021 IL App (2d) 200064-U, ¶ 5. The State presented testimony from multiple witnesses, including K.C., who testified as follows: Rubini moved into K.C.'s condo shortly after the two began dating in the summer of 2018. *Id.* at ¶ 7. K.C. explained that she never gave Rubini keys to her condo and instead left the doors unlocked when she was not home. *Id.* She further testified that Rubini had agreed to make monthly payments, but she never received any money from him. *Id.* This led K.C. to ask Rubini to move out, which he did in November 2018, about a week and a half before Thanksgiving. *Id.* at ¶ 8.

K.C. testified that she and Rubini continued their relationship after he moved out. *Id.* at ¶ 9. Although he no longer lived with her, Rubini visited for Thanksgiving dinner, stayed the night, and left the following day. *Id.* at ¶¶ 9–10. K.C. testified that later that evening, she went to bed around 10:00 p.m. with all the doors locked. *Id.* at ¶¶ 10, 20. She awoke to Rubini on top of her, pinning her down. *Id.* She told him to get off and asked how he got inside, to which he replied, "The doors were open." *Id.* at ¶ 10. K.C. testified that she felt Rubini's exposed penis against her, so she grabbed it as hard as she could in an attempt to free herself, but Rubini responded by hitting her, ripping off her camisole, and throwing "her across the room." *Id.* at ¶¶ 10–11.

Sometime after 1:00 a.m., K.C. escaped to her neighbor's home, where she watched Rubini leave her condo through her patio sliding door. *Id.* K.C.'s neighbor called the police. *Id.*

K.C. testified that when the police arrived, they escorted her back to her home. *Id.* at ¶ 13. She testified that although the sliding patio door was "wide open" when she fled to find help, the door was closed and locked when she returned with the police. *Id.* ¶¶ 20–21. According to K.C., she did not lock the sliding patio door, and to regain entry, the police had to enter through a front window. *Id.* at ¶ 21. The next morning, K.C. went to the hospital and was treated for her injuries, including a cheekbone fracture. *Id.* ¶¶ 14–15, 24, 33–34.

Officer Finze testified before the grand jury and at trial regarding his observations upon arriving at the scene. *Id.* ¶ 24; *see* Dkts. 16-4 at 3; 16-6 at 7–8. Finze's trial testimony was as follows: K.C. was at her neighbor's apartment; she appeared visibly "shaken [and] frightened" with "redness all around her face," "dried blood around her nose," "a bump on her forehead," and redness on her left ear. *Rubini*, 2021 IL App (2d) 200064-U, ¶ 24. Finze escorted K.C. back to her condo, but she was unable to open either the sliding or front door, as both were locked. *Id.* Finze found an open window, climbed through it, and unlocked the front door from the inside. *Id.* Once inside, Finze observed that the bedroom was in disarray with blood on the sheets and pillows, crooked pictures on the wall, and a broken crucifix on a nightstand. *Id.* ¶ 25.

4

Following closing arguments, a jury found Rubini guilty of home invasion and aggravated domestic battery, but not guilty of criminal sexual assault. *Id.* ¶ 46. The trial court merged the home invasion and aggravated domestic battery convictions and sentenced Rubini to 20 years. *Id.* ¶ 48. On direct appeal, the Illinois Appellate Court affirmed the conviction and sentence. *Id.* ¶¶ 1–2, 61, 77. Rubini did not file a petition for leave to appeal ("PLA") to the Illinois Supreme Court. [Dkt. 16-5 at 51.]

C. **Postconviction Proceedings**

Rubini filed a *pro se* petition for state postconviction relief, which raised the following claims: (1) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by "blocking" K.C. from testifying in the order of protection proceedings; (2) the State knowingly used K.C.'s perjured testimony at trial; (3) the State used Finze's false testimony in the grand jury proceedings to obtain an indictment; (4) K.C. testified pursuant to an undisclosed agreement with the State that reduced a felony DUI charge to a misdemeanor; (5) the admission of the crowbar found by K.C. after the incident violated the Illinois Rules of Evidence; (6) trial counsel was ineffective for posting Rubini's bond with funds in counsel's escrow account; (7) trial counsel was ineffective for failing to obtain and introduce evidence showing that Rubini lived with K.C. at the time of the assault; (8) trial counsel was ineffective for failing to call certain witnesses[3] who could have established that Rubini lived in the condo; (9) trial counsel was ineffective for not presenting evidence that Rubini posted bond for K.C.

---

[3] The Illinois Appellate Court evaluated Rubini's claims that his trial counsel was ineffective for failing to call two witnesses—a neighbor and K.C.'s probation officer—as one claim (Claim Eight). [*Compare* Dkts. 16-4 at 4, 11; *with* 16-5 at 73; *and* 16-6 at 13 (listing these as two separate claims).]

for her DUI in October 2018; (10) trial counsel was ineffective for failing to obtain telephone records of calls made by K.C. while in custody for the DUI; and (11) trial counsel was ineffective for not allowing Rubini to testify at trial. [Dkts. 16-4 at 4; 16-5 at 50–77.]

Although the trial court did not address each claim, it summarily dismissed the petition at the first stage of the proceedings, finding there was no prosecutorial misconduct or perjured testimony, and the order of protection proceedings had no impact on the outcome of the case. [Dkts. 16-5 at 102–04.]

On appeal, appointed counsel moved to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), stating that an appeal would lack arguable merit. [Dkt. 16-6.] Rubini filed a response. [Dkt. 16-7.] The Illinois Appellate Court agreed with appointed counsel's conclusions, granted the motion to withdraw, and affirmed the judgment dismissing Rubini's postconviction petition. *People v. Rubini*, No. 2-22-0320 (Ill. App. Ct. May 31, 2023), ECF No. 16-4. The Illinois Supreme Court denied Rubini's postconviction PLA. *People v. Rubini*, 221 N.E.3d 388 (Ill. 2023) (Table), ECF No. 16-10.

Rubini then filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## II.  Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a petitioner in custody pursuant to the judgment of a state court must make two showings to be eligible for a writ of habeas corpus: (1) "that he is in custody in violation of the Constitution or laws or treaties of the United States,"

6

§ 2254(a), and (2) that the state postconviction court's adjudication of his claim "resulted in a decision that" either "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(1)–(2).

The requirements of § 2254 are difficult to clear. As the Supreme Court "has stated unequivocally, and on more than one occasion, . . . 'clearly established law as determined by [the Supreme] Court refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Berkman v. Vanihel*, 33 F.4th 937, 945 (7th Cir. 2022) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004)). The "contrary to" prong does not apply unless "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases . . . [or] confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). And a state court decision is not an "unreasonable application" of clearly established federal law unless it is "objectively unreasonable," "lying well outside the boundaries of permissible differences in opinion." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (cleaned up). The decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

7

**III. Analysis**

In his *pro se* federal habeas petition, Rubini brings the following four claims:[4]

1. The State violated his right to question K.C. by preventing her from testifying in the order of protection proceedings (Ground One) [Dkt. 1 at 5, 8];

2. The State knowingly used K.C.'s perjured testimony at trial (Ground Two) [*Id.* at 8];

3. The State knowingly used Finze's perjured testimony in the grand jury proceedings to obtain an indictment (Ground Three) [*Id.*]; and

4. The State failed to disclose BMO Harris joint checking account statements and a rent receipt at trial (Ground Four) [*Id.* at 9.]

Respondent argues that Grounds One and Two are meritless, and Grounds Three and Four are defaulted. [Dkt. 16 at 6–15.] As explained below, the Court agrees that Rubini is not entitled to habeas relief on any of his claims.

---

[4] Rubini's habeas petition includes a handwritten reference to an attached document described as "Questions Presented Pro-se[ ] Post Conviction." The "Questions Presented" document is nearly identical to a page in postconviction counsel's *Finley* motion. Claims One, Two, and Three in the *Finley* motion and the "Questions Presented" correspond to Grounds One, Two, and Three of the habeas petition. The "Questions Presented" introduces a *Brady* claim, which is also Ground Four of the habeas petition. [*Compare* Dkts. 1 at 5–7; *with* 16-6 at 13; *and* 16-9 at 17.] No claim in the "Questions Presented" document cites supporting facts. Instead, each claim cites the relevant portion of his postconviction petition. [*See, e.g.*, Dkt. 1 at 6 ("Ground (6) his counsel was ineffective for posting bond of his behalf (C. 702).").]

While the Court must liberally construe a *pro se* § 2254 petition, this does not relieve Rubini from complying with Habeas Rule 2(c), which requires a petitioner to "specify all the grounds for relief available" to a petitioner *and* "state the facts supporting each ground." *Mayle v. Felix*, 545 U.S. 644, 655–56 (2005) (emphasis added); *see Jenkins v. Doyle*, 2008 WL 3982181, at *4 (E.D. Wis. Aug. 22, 2008) ("The [ ] 'notice pleading' permitted in civil suits is inadequate in habeas cases, since 'the petition is expected to state facts that point to a real possibility of constitutional error.'" (quoting Advisory Committee Note to Habeas Rule 4 Governing Section 2254 Cases)). Indeed, the four claims included on the face of his petition leave little doubt that Rubini fully understood this requirement because he provided factual support for each individual claim. [Dkt. 1 at 5, 8–9.] Moreover, while Federal Rule of Civil Procedure 10(c) permits a habeas petitioner to incorporate facts from an appended brief to plead his petition with sufficient particularity, *see Ross v. Williams*, 950 F.3d 1160, 1167 (9th Cir. 2020) (citing *Dye v. Hofbauer*, 546 U.S. 1, (2005)), Rubini's postconviction petition is not among the exhibits appended to his § 2254 petition. Consequently, the Court limits its habeas review to the four handwritten claims in Rubini's § 2254 petition form.

### A. Ground One: Testimony in the Order of Protection Proceedings

Rubini contends that the State violated his due process rights[5] by engaging in prosecutorial misconduct and suppressing evidence when it prevented K.C. from testifying in the order of protection proceedings "[i]n an attempt to stop further damage to her [criminal case]." [Dkts. 1 at 5, 8; 23 at 1–2.]

A due process claim based on suppression of evidence is governed by *Brady v. Maryland*, 373 US. 83 (1963). *See Dekelaita v. United States*, 108 F.4th 960, 968 (7th Cir. 2024). Under *Brady*, the prosecution violates due process by withholding from the defense evidence that is exculpatory—that is, evidence that is both favorable and material. *Smith v. Cain*, 565 U.S. 73, 75 (2012). This includes evidence that tends to undermine a witness's credibility. *Weary v. Cain*, 577 U.S. 385, 392 (2016) (citing *Giglio v. United States*, 405 U.S. 150, 153–54 (1972)). To establish a *Brady* violation, Rubini must point to evidence that was (1) favorable to the defense, (2) suppressed by the government, and (3) "material to an issue at trial." *United States v. Shields*, 789 F.3d 733, 746 (7th Cir. 2015).

---

[5] Although Rubini's habeas petition appears to frame Ground One as a Sixth Amendment confrontation clause claim, (*see* Dkt. 1 at 5 ("Prosecutor's violated petitioner's right to question his accuser" in the order of protection proceedings")), his reply brief confirms that he is asserting a due process violation. [Dkt. 23 at 1–2 (alleging that the State violated "[the Fourteenth] Amendment right to Due Process," engaged in "official misconduct," and "suppression of evidence.")]. Even if Rubini raised a Sixth Amendment claim, it lacks merit. "The right to confrontation is basically a trial right." *United States v. Andrus*, 775 F.2d 825, 836 (7th Cir. 1985) (citing *Barber v. Page*, 390 U.S. 719, 725 (1968)). The Seventh Circuit has declined to recognize a right to confrontation in criminal proceedings outside the trial context. *See, e.g.*, *id.* (the confrontation clause does not apply at preliminary hearings); *United States v. Isom*, 635 F.3d 904, 907 (7th Cir. 2011) (the confrontation clause does not apply at sentencing hearings).

On postconviction review, the Illinois Appellate Court identified the controlling Supreme Court precedent—*Brady*—and correctly articulated the standard. [Dkt. 16-4 at 7–8.] Having identified and applied the correct federal law, the Illinois Appellate Court's decision is not contrary to clearly established federal law.

Nor was the Illinois Appellate Court's application of *Brady* unreasonable. Under *Brady*, "[e]vidence is favorable to the defense when it is either exculpatory or could be used for purposes of impeachment." *United States v. Lawson*, 810 F.3d 1032, 1042 (7th Cir. 2016) (citing *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)). Evidence is exculpatory if it "is 'supportive of a claim of innocence' to the crimes charged." *United States v. Reyes*, 270 F.3d 1158, 1167 (7th Cir. 2001) (citing *United States v. Agurs*, 427 U.S. 97, 106–07 (1976)).

The Illinois Appellate Court focused its analysis on the "favorable to the defense" prong of *Brady*, concluding that even if "the State 'blocked' K.C.'s testimony in [the order of protection proceedings], and thereby suppressed evidence, it is a matter of pure speculation whether K.C.'s testimony would have been favorable to the defense." [Dkt. 16-4 at 8.] K.C. testified at trial and was cross-examined by Rubini's counsel, and her testimony was far from favorable to the defense, (*see Rubini*, 2021 IL App (2d) 200064-U, ¶¶ 8–9, 17–19, 21). Rubini provides nothing more than sheer speculation that K.C.'s potential order of protection testimony would have been favorable as exculpatory or impeachment evidence, which falls short of establishing a *Brady* violation. *See United States v. Shields*, 789 F.3d 733, 747–48 (7th Cir. 2015) (while the prosecution has an affirmative obligation to disclose *Brady* material, the

10

defendant must establish an alleged violation "by offering more than mere speculation or unsupported assertions.") Therefore, federal habeas relief is not available as to Ground One.

## B. Ground Two: Use of K.C.'s Allegedly Perjured Testimony

Rubini's second claim is that the State violated his due process rights by knowingly using K.C.'s perjured testimony at trial to secure his conviction. [Dkt. 1 at 8.] He contends that the State knew her testimony was false because K.C.'s order of protection petition marked "Shared/Common Dwelling" in the "Relationship Code" section, which, according to Rubini, conflicts with her testimony that he had moved out of the condo before the assault. [Dkts. 1 at 8; 23 at 2–3.]

"[D]ue-process rights are violated when the government obtains a conviction through the knowing use of false testimony." *United States v. Hilliard*, 851 F.3d 768, 782 (7th Cir. 2017) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). "Under *Napue*, a petitioner must show that: 1) the prosecution's case included perjured testimony; 2) the prosecution knew, or should have known, of the perjury; and 3) there is any likelihood that the false testimony could have affected the judgment of the jury." *Ashburn v. Korte*, 761 F.3d 741, 757 (7th Cir. 2014) (cleaned up).

The Illinois Appellate Court, citing only state law, correctly stated the applicable standard for evaluating *Napue* claims:

> It is well established that "the State's knowing use of perjured testimony to obtain a criminal conviction constitutes a violation of due process of law." However, to set aside a conviction on this basis, the defendant must show prejudice in the form of a reasonable likelihood that the perjured testimony affected the jury's verdict.

11

[Dkt. 16-4 at 8 (citing *People v. Olinger*, 680 N.E.2d 321, 345, 348 (Ill. 1997) (relying on *United States v. Bagley*, 473 U.S. 667, 678–80 (1985) to describe *Napue's* materiality prong); *People v. Moore*, 217 N.E.3d 377, 385 (Ill. App. Ct. 2022)).] *See also Hanson v. Beth*, 738 F.3d 158, 163 (7th Cir. 2013) ("[T]he Supreme Court has said that a state court does not need to cite, or even be aware of, its precedents 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

In rejecting Rubini's claim, the Illinois Appellate Court found that K.C. did not commit perjury because the checked box in her order of protection petition indicating "Shared/Common Dwelling" referred to her past relationship with Rubini and did not reflect their living arrangement at the time of the incident. [Dkt. 16-4 at 8–9.] It emphasized that the narrative portion of K.C.'s petition stated that Rubini had "broke into [ ] *my* sliding glass door," which "indicated that she and [Rubini] were not cohabitating on the date of the incident." [*Id.* at 8 (emphasis in original).] As a result, it determined that K.C. did not perjure herself and that the order of protection petition did not support Rubini's argument that he had authority to be in the condo on the night of the assault. [*Id.* at 9.] Therefore, the Illinois Appellate Court's application of *Napue* was reasonable.

To be sure, the record does not contradict the Illinois Appellate Court's finding that K.C.'s order of protection petition referred to her past relationship with Rubini. In the narrative portion of her order of protection petition, K.C. stated that on the night of the assault, Rubini "came into my bedroom," "had been at his house," and

that he "went back to my condo and took my phone." [Dkt. 16-3 at 45.] Likewise at trial, K.C. testified that in November 2018, she told Rubini to move out of her condo about a week and a half before the offense, but that they continued to have contact afterward. *Rubini*, 2021 IL App (2d) 200064-U, ¶¶ 8–9. Although Rubini slept at K.C.'s condo after he moved, K.C. testified that Rubini did not have permission to be there on the night of the assault. *Id.* at ¶¶ 9–10, 19.

Simply put, Rubini has adduced no evidence that K.C. committed perjury, and without evidence that the prosecution's case included perjured testimony, there is no basis for a claim under *Napue. See Ashburn*, 761 F.3d at 757 ("petitioner must show that [ ] the prosecution's case included perjured testimony") The Court cannot conclude that the Illinois Appellate Court's decision was unreasonable, so Rubini is not entitled to federal habeas relief on Ground Two.

**C.      Ground Three: Use of Officer Finze's Allegedly False Testimony**

Like his second claim, Rubini's third claim asserts that the State knowingly used Finze's perjured testimony at the grand jury proceeding to obtain the indictment. [Dkt. 1 at 8.] According to Rubini, Finze testified before the grand jury that "he saw damage to the patio door upon arriv[ing] at K.C.'s condo]," but later "testif[ied] at trial [ ] that he never saw damage to the patio door." [*Id.*] Respondent contends that the Court should not review this claim on the merits because it is procedurally defaulted. [Dkt. 16 at 11–12.]

Federal courts may not review state prisoners' habeas claims that have been "procedurally defaulted in state court," a doctrine that advances "comity, finality, and federalism interests." *Davila v. Davis*, 582 U.S. 521, 527–28 (2017). "Procedural

13

defaults take several forms," *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015), one of which occurs when a state court judgment rests upon adequate and independent state grounds. *Davila*, 582 U.S. at 527; *Flint v. Carr*, 10 F.4th 786, 793 (7th Cir. 2021); *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). A ground is adequate if it is "firmly established and regularly followed." *Flint*, 10 F.4th at 793 (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)). A ground is independent "if it does not depend on the merits of the petitioner's claim." *Id.* (internal quotation omitted). When a state court refuses to adjudicate a petitioner's federal claims because he did not raise them in accordance with the state's procedural rules, "that will normally qualify as an independent and adequate state ground for denying federal review." *Id.* at 794 (internal quotation omitted).

Here, on postconviction review, the Illinois Appellate Court dismissed Rubini's claim because he failed to attach transcripts of Finze's grand jury testimony or any other evidence to substantiate his allegations, noting that Rubini did not provide an explanation for his failure to do so. [Dkt. 16-4 at 10.] Illinois law requires a postconviction petition to "have attached thereto affidavits, records or other evidence supporting its allegations or [to] state why the same are not attached." 725 ILCS 5/122-2. Dismissal for failure to attach affidavits, records or other evidence is an independent and adequate state ground because the Illinois Appellate Court relied on the lack of evidentiary materials to dispose of the claim. *United States ex rel. Johnson v. Gaetz,* 2010 WL 2044930, at *4 (N.D. Ill May 24, 2010) (explaining appellate court's dismissal for lack of evidentiary support is an independent and

14

adequate state ground). Because the Illinois courts relied upon an independent and adequate state law ground, the claim is procedurally defaulted, and the Court cannot address the merits of the claim.[6] *See Richardson v. Lemke*, 745 F.3d 258, 268–69 (7th Cir. 2014).

A court may excuse the procedural default and reach the merits of a petitioner's claim only if he demonstrates either: (1) cause for the default and actual prejudice or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018). Here, Rubini makes no argument that either exception applies, so the Court will not excuse his default. Accordingly, Rubini is not entitled to federal habeas relief on Ground Three.

**D.    Ground Four: Undisclosed Bank Statements and Rent Receipt**

Rubini's final claim is that the State violated *Brady* by failing to disclose joint BMO Harris bank statements and a rent receipt, which he asserts would prove that he lived in K.C.'s condo at the time of the assault. [Dkt. 1 at 9.] Respondent argues this claim is procedurally defaulted because Rubini did not raise it through one full round of state court review. [Dkt. 16 at 13–16.] The Court agrees.

Under § 2254(b), "a state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila*, 582 U.S. at 527 (citing § 2254(b)(1)(A)). To satisfy the exhaustion requirement, "state prisoners must give

---

[6] Even if Rubini had not procedurally defaulted, this claim fails on the merits because the trial jury's guilty verdict renders harmless any possible error in the grand jury proceedings. *See United States v. Montez*, 858 F.3d 1085, 1091 (7th Cir. 2017) (a trial jury's guilty verdict renders an error in the grand jury proceedings harmless); *Tyson v. Trigg*, 50 F.3d 436, 442 (7th Cir. 1995) (finding a grand jury irregularity harmless because "[t]he conviction proves that there was probable cause to try" the habeas petitioner).

the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Illinois, this includes presenting the claims in a petition for leave to appeal to the state supreme court. *Snow*, 880 F.3d at 864 (citing *Boerckel*, 526 U.S. at 845–46). If the "'federal issue was not fairly presented to the state courts and those courts would now hold the claim procedurally barred,' the procedural default doctrine precludes" federal habeas corpus review. *Thomas*, 822 F.3d at 384 (quoting *Ward v. Jenkins*, 613 F.3d 692, 696 (7th Cir. 2010)).

Rubini did not present his *Brady* claim in state court, so it is defaulted. [Dkts. 16-4–16-6.] True, Rubini pursued a related argument through one full round of state postconviction review when he asserted that his trial counsel was ineffective for not "showing BMO-Harris joint checking account" records "and a $300 rent receipt." [Dkt. 16-5 at 74–76.] But this is not the same as the argument he raises now. Now, he makes the opposite argument in the form of a *Brady* claim—that the State failed to disclose to him the BMO-Harris joint checking account and rent receipts. [Dkt. 1 at 9.] Because Rubini did not raise the *Brady* claim in state court, it is procedurally defaulted.[7] *See Thomas*, 822 F.3d at 384.

Even if it were not procedurally defaulted, the claim fails on the merits because Rubini's post-conviction petition makes clear that he knew of the bank records and rent receipt. "[E]vidence cannot be said to have been suppressed in violation of *Brady*

---

[7]   As mentioned, procedural default can be excused if a petitioner can show cause and prejudice or that failure to review the claim would result in a miscarriage of justice, *see Snow*, 880 F.3d at 864, but Rubini does not attempt to make such a showing here. Even if he had, the claim fails on the merits.

16

if it was already known to the defendant." *Camm v. Faith*, 937 F.3d 1096, 1110 (7th Cir. 2019) (quoting *Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017)). Accordingly, Ground Four is denied.

## IV. Certificate of Appealability and Notice of Appeal Rights

This Court's denial of Rubini's petition is a final decision ending the case. Rubini may appeal only if he obtains a certificate of appealability from this Court or the Court of Appeals. 28 U.S.C. § 2253(c)(1)(A). The Court declines to issue a certificate of appealability because Rubini does not make a substantial showing of the denial of a constitutional right, *see* § 2253(c)(2), and reasonable jurists would not debate, much less disagree with, this Court's resolution of his petition. *See Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008). If Rubini wishes to appeal, he must request a certificate of appealability from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22 and 28 U.S.C. § 2253(c), in addition to filing his notice of appeal.

Rubini must file a notice of appeal in this Court within 30 days after judgment is entered. Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this decision to preserve his appellate right, but if he wishes the Court to reconsider its judgment, he may file a motion under Federal of Civil Procedure 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of entry of judgment and suspends the deadline for filing an appeal until the motion is ruled on. *See* Fed. R. Civ. P. 59(e); Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b)

motion suspends the deadline for filing an appeal until the motion is ruled on only if the motion is filed within 28 days of the judgment. Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

## V.     Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus [Dkt. 1] is denied. The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). Final judgment shall enter in favor of Respondent Greene and against Petitioner Rubini. Civil case terminated.

Enter: 24-cv-1943
Date: September 30, 2024

_____
Lindsay C. Jenkins
United States District Judge